Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/23/2016 08:09 AM CDT

State of Nebraska, appellee, v.
Travis T. Mitchell, appellant.
___ N.W.2d ___

Filed September 23, 2016.    No. S-15-086.

1. **Motions for Mistrial: Appeal and Error.** The decision whether to grant a motion for mistrial will not be disturbed on appeal in the absence of an abuse of discretion.

2. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

3. **Trial: Testimony: Constitutional Law: Arrests: Impeachment.** A defendant waives his or her Fifth Amendment protections when the defendant takes the stand and testifies which, in turn, allows his or her prearrest silence to be used for impeachment.

4. **Trial: Prosecuting Attorneys.** Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole.

5. **Trial: Prosecuting Attorneys: Appeal and Error.** In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction.

6. **Trial: Prosecuting Attorneys.** When a prosecutor's comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense.

7. **Motions for Mistrial: Motions to Strike: Proof: Appeal and Error.**
Error cannot ordinarily be predicated on the failure to grant a mistrial if
an objection or motion to strike the improper material is sustained and
the jury is admonished to disregard such material.

Petition for further review from the Court of Appeals,
MOORE, Chief Judge, and IRWIN and INBODY, Judges, on appeal
thereto from the District Court for Lancaster County, JOHN A.
COLBORN, Judge. Judgment of Court of Appeals affirmed.

Joseph D. Nigro, Lancaster County Public Defender,
Christopher Eickholt, and Nathan J. Sohriakoff for appellant.

Douglas J. Peterson, Attorney General, and Melissa R.
Vincent for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY,
KELCH, and FUNKE, JJ.

KELCH, J.

## INTRODUCTION

Travis T. Mitchell was convicted of driving under the influence (DUI), fourth offense, with refusal to submit to a chemical test, and for driving during revocation. The Nebraska Court of Appeals affirmed, see *State v. Mitchell*, 23 Neb. App. 657, 876 N.W.2d 1 (2016), and we granted Mitchell's petition for further review. Mitchell argues that the district court erred in overruling his motion for mistrial based on the prosecutor's comments to the jury during closing arguments concerning Mitchell's postarrest, pre-*Miranda* silence. We affirm the judgment of the Court of Appeals that affirmed Mitchell's convictions and sentences.

## BACKGROUND

On June 6, 2014, after a vehicular pursuit in Lincoln, Nebraska, police apprehended Mitchell in front of his residence. The State charged Mitchell with DUI with refusal to submit to a chemical test and with driving during revocation,

and the district court conducted a jury trial. Mitchell elected not to testify.

Three different officers observed Mitchell's driving before he returned home and was arrested. All three officers testified at Mitchell's trial, and based on their experience and observations, all three opined Mitchell showed signs that he was driving while under the influence of alcohol.

Officer Sarah Williams testified that she was in her cruiser and observed Mitchell's vehicle first, heading northbound on 70th Street; she identified the driver as Mitchell. Williams tried to follow Mitchell, but he was driving erratically, using the middle turn lane to pass other vehicles at a high rate of speed. Williams testified that the speed limit in that area was 35 miles per hour and that Mitchell was traveling 50 miles per hour or more. According to Williams, Mitchell's maneuvers were consistent with someone driving while under the influence of alcohol. Williams testified that she slowed down, because continuing to follow Mitchell would have been unsafe.

Officer James Quandt testified that he observed Mitchell's vehicle stop at the traffic light at the intersection of 70th and A Streets. Quandt identified the driver of the vehicle as Mitchell. Quandt testified that he witnessed Mitchell's vehicle speed, change lanes, and run a red light at Wedgewood Drive and 70th Street. Thereafter, Quandt lost sight of Mitchell's vehicle, but radioed to other officers that Mitchell was northbound and might be headed to his home.

Officer Joseph Keiser testified that he witnessed Mitchell pull into a driveway at a high rate of speed. Keiser noticed the driver's side tires go up onto the grass, "half missing" the driveway, before the vehicle came to a stop. Keiser then approached Mitchell's vehicle and proceeded to conduct a search, which revealed five cans of beer, with at least one can open, and an open bottle of liquor. Keiser also testified at trial that he could smell alcohol on Mitchell. Based on the odor of alcohol, Mitchell's actions, and his manner of driving, Keiser opined that Mitchell was under the influence of alcohol.

Quandt later arrived at Mitchell's home, where he encountered Keiser. Quandt testified that he also observed an odor of alcohol on Mitchell. Quandt testified that Mitchell was staggering as he walked and had difficulty balancing, that Mitchell's eyes were bloodshot, and that his speech was slightly slurred. Quandt testified that based on these observations and his training and experience in "a thousand or more" DUI investigations, he believed Mitchell was under the influence of alcohol. Quandt further opined that Mitchell could not safely operate a motor vehicle at that time and that driving behavior like Mitchell's can be a sign that a person is under the influence of alcohol. Quandt testified that Mitchell was arrested for driving under revocation. After conducting a DUI investigation of the scene, Quandt transported Mitchell to the Lancaster County jail.

Quandt testified that while en route to the jail, Mitchell repeatedly stated that he should not be under arrest, because police did not catch him driving. The district court received, and the jury listened to, an audio recording of the trip to the jail. Mitchell did not deny or affirmatively state that he had been drinking alcohol, and Quandt did not question him about the matter. Quandt testified that at the jail, Mitchell refused to submit to a chemical test. According to Quandt's testimony from an earlier hearing outside the presence of the jury, Mitchell received *Miranda* warnings sometime after he refused the chemical test, but there was no evidence at trial about *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

During closing statements, the State argued:

Mitchell never says, I'm not drunk. I wasn't drinking. Why are you arresting me for [DUI], I'm not drunk. What he says is, "You didn't catch me driving. You didn't arrest me in my truck." And later, "You didn't breathalyze me in my car." Never once does he say he's not drunk. It's all about where you got me. He never denied that he's drunk . . . .

Mitchell's counsel objected and moved for a mistrial. The court did not specifically rule on Mitchell's motion for mistrial but instructed the jury to disregard the State's comments about what Mitchell did or did not deny.

The jury found Mitchell guilty of DUI with refusal to submit to a chemical test and of driving during revocation. Following an enhancement hearing concerning Mitchell's multiple DUI convictions, the district court sentenced Mitchell to 5 to 10 years' imprisonment and revoked his driving privileges for 15 years.

Mitchell appealed to the Court of Appeals, assigning, among other things, that the district court erred when it overruled his motion for mistrial based on the prosecutor's comment during closing argument that Mitchell did not deny being intoxicated. The Court of Appeals affirmed the convictions and sentences, determining that Mitchell had not suffered actual prejudice as a result of the trial court's denial of his motion for mistrial. See *State v. Mitchell*, 23 Neb. App. 657, 876 N.W.2d 1 (2016).

We granted Mitchell's petition for further review.

## ASSIGNMENT OF ERROR

In his petition for further review, Mitchell assigns that the Court of Appeals erred by failing to find that the district court should have declared a mistrial because the State violated due process and the Nebraska and U.S. Constitutions by inappropriately commenting during closing arguments on Mitchell's pretrial silence.

## STANDARD OF REVIEW

[1] The decision whether to grant a motion for mistrial will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

## ANALYSIS

At trial, the jury heard evidence that Mitchell made unsolicited postarrest, pre-*Miranda* statements during the ride to

the jail, in which he repeatedly volunteered that he should not be under arrest because police did not catch him driving. The instant appeal centers on the prosecutor's subsequent statements during closing arguments, which merit repetition:

> Mitchell never says, I'm not drunk. I wasn't drinking. Why are you arresting me for [DUI], I'm not drunk. What he says is, "You didn't catch me driving. You didn't arrest me in my truck." And later, "You didn't breathalyze me in my car." Never once does he say he's not drunk. It's all about where you got me. He never denied that he's drunk . . . .

The district court did not specifically rule on Mitchell's motion for mistrial but did admonish the jury to disregard the comments of the prosecutor. We interpret this as implicitly overruling the motion for mistrial.

[2] Mitchell assigns that the Court of Appeals erred by failing to find that the district court ought to have declared a mistrial. A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *State v. Daly, supra*.

[3] Mitchell asserts that because he did not testify at trial, and subject himself to cross-examination, he did not waive any right concerning the use of his postarrest, pre-*Miranda* silence. See *Jenkins v. Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980) (defendant waives his Fifth Amendment protections when he takes stand and testifies which, in turn, allows his prearrest silence to be used for impeachment).

The Court of Appeals, in examining the prosecutor's closing remarks about Mitchell's postarrest, pre-*Miranda* silence, relied upon *U.S. v. Frazier*, 408 F.3d 1102 (8th Cir. 2005). In *Frazier*, during the State's case in chief, the prosecutor

questioned the arresting officer about the defendant's reaction to the arrest and about the complete silence of the defendant during the process of arrest. This observation of silence occurred after the defendant had been arrested but prior to being read his *Miranda* rights. The Eighth Circuit stated that "[a]lthough [the defendant] was under arrest, there was no governmental action at that point inducing his silence," because he had not yet been read his *Miranda* rights. 408 F.3d at 1111. The *Frazier* court therefore concluded that the government could utilize the defendant's postarrest, pre-*Miranda* silence as substantive evidence of his guilt.

The Court of Appeals found that the principle in *Frazier* applied "equally to impeachment use of silence as to the use of silence as substantive evidence of a defendant's guilt" and that "[b]ecause his silence occurred pre-*Miranda*, the prosecutor's comment utilizing Mitchell's silence as evidence of his guilt was not improper." *State v. Mitchell*, 23 Neb. App. 657, 670, 876 N.W.2d 1, 11-12 (2016).

However, Mitchell argues (1) that the Court of Appeals incorrectly relied on *Frazier*, because that court narrowly tailored its opinion to the specific facts present in that case, and (2) that the decision in *Frazier* is not consistent with U.S. Supreme Court precedent in *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *Wainwright v. Greenfield*, 474 U.S. 284, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986); and *Jenkins v. Anderson, supra*.

Mitchell is partially correct in that the court in *Frazier* did limit its holding to "the facts before" it and further stated, "We are speaking in this case only of the defendant's silence during and just after his arrest." *U.S. v. Frazier*, 408 F.3d at 1111. Despite *Fraizer*'s limited holding, the Court of Appeals used it as guidance in evaluating the closing remarks in this case and in resolving the ultimate issue it presents: whether the comments were overly prejudicial, resulting in an unfair trial. See, *State v. Dixon, supra*; *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

In addition, Mitchell cites *U.S. v. Moore*, 104 F.3d 377 (D.C. Cir. 1997), where the court found that the prosecutor's closing comments regarding the defendant's postarrest, pre-*Miranda* silence violated his Fifth Amendment right against self-incrimination. In *Moore*, the defendant did not testify at trial and the prosecution not only commented on the defendant's postarrest, pre-*Miranda* silence in closing but also presented such evidence during its case in chief. As a result, the court found that "a prosecutor's comment on a defendant's post-custodial silence unduly burdens that defendant's Fifth Amendment right to remain silent at trial, as it calls a jury's further attention to the fact that he has not arisen to remove whatever taint the pretrial but post-custodial silence may have spread." 104 F.3d at 385. Mitchell also points out that other courts have agreed with *Moore*. See, *U.S. v. Hernandez*, 948 F.2d 316 (7th Cir. 1991); *U.S. v. Velarde-Gomez*, 269 F.3d 1023 (9th Cir. 2001) (en banc).

A distinguishing factor separating Mitchell's case from *Moore* is that the *Moore* court, in discussing a defendant's absolute right to remain silent, recognized that "[w]hile a defendant who chooses to volunteer an unsolicited admission or statement to police before questioning may be held to have waived the protection of that right, the defendant who stands silent must be treated as having asserted it." 104 F.3d at 385. Here, Mitchell volunteered statements prior to *Miranda* warnings being given and those statements were presented to the jury. This is not a case where a defendant remained silent at all times, which, under *Moore*, would constitute an assertion of the Fifth Amendment right against self-incrimination. In light of Mitchell's unsolicited statements, it is arguable whether these facts present a situation where Mitchell's postarrest, pre-*Miranda* silence is at issue.

[4,5] But even assuming that Mitchell had asserted his Fifth Amendment rights through his partial inferred silence and that, as Mitchell claims, the prosecutor's comments rose to the level of improper conduct during closing argument, it would

still be necessary to determine whether Mitchell's right to a fair trial was prejudiced. See *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014). Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *Id.* We consider the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction. *Id.*

While this court is concerned about the prosecutor's comments because they had the potential to mislead the jury, we must weigh any prejudicial effect in view of the overall circumstances of this case. See *id*. Here, the comments were isolated to closing argument. Further, in this instance, the degree to which the prosecutor's remarks tended to mislead is intertwined with the strength of the evidence supporting Mitchell's conviction. The evidence reflects that Mitchell illegally drove in the middle lane passing cars at a high rate of speed, endangered other drivers, and drove off the roadway. Additionally, three different officers observed Mitchell's driving and each opined that Mitchell showed signs of driving while under the influence of alcohol. Thus, the evidence within the State's case in chief overwhelmingly supported Mitchell's conviction.

[6] Moreover, we observe that Mitchell's state of intoxication was relevant in closing argument. Mitchell himself raised the issue of whether he was intoxicated in opening statements when counsel stated, "And while he was driving on a license that was revoked, he was not driving under the influence." Still, the prosecutor's comments that "Mitchell never says, I'm not drunk. I wasn't drinking" were not based upon evidence directly adduced during the trial. Arguably, the prosecutor based the comments upon a reasonable inference from Mitchell's volunteered statements. When a prosecutor's

comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. *State v. Dubray, supra*.

[7] Additionally, in the instant case, although the district court did not specifically rule on Mitchell's motion for mistrial, it did provide a curative instruction by admonishing the jury to disregard the prosecutor's comments. And error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006).

After weighing the above factors, we find that although the prosecutor's closing remarks about Mitchell's postarrest, pre-*Miranda* silence are questionable under these facts, they did not prejudice his right to a fair trial. As a result, we find no abuse of discretion by the district court in implicitly overruling Mitchell's motion for mistrial.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the Court of Appeals.

AFFIRMED.